UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------X

DEWAYNE RICHARDSON,

          Plaintiff,

   - against -

DEPARTMENT OF CORRECTIONS OF
N.Y.S., BRIAN FISCHER, LT COFFY,
ADA PAREZ, LT PHIPPS, CPT
CAVELERI, C.O. KING,

          Defendants.

------------------------------------------------------X

**OPINION AND ORDER**

**10 Civ. 6137 (SAS)**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED:   9/13/11

SHIRA A. SCHEINDLIN, U.S.D.J.:

## I.   INTRODUCTION

Dewayne Richardson, presently incarcerated and proceeding *pro se*,

brings this action pursuant to section 1983 of Title 42 of the United States Code

("section 1983") alleging violations of his constitutional rights. Defendants

include the Department of Corrections of N.Y.S. ("DOCS")[1]; Brian Fischer,

---

[1]     A review of the docket sheet indicates that the Amended Complaint
("Compl." or "Complaint") was filed on April 1, 2011. Rule 4(m) of the Federal
Rules of Civil Procedure provides that if a defendant is not served within 120 days
after the complaint is filed, the claims may be dismissed without prejudice. To
date, defendant DOCS and N.Y.C. District Attorney's Office have not been served.
Therefore, all claims against DOCS and the N.Y.C. District Attorney's Office are
dismissed without prejudice.

Commissioner of DOCS ("Fischer")[2]; Lieutenant Coffy of Downstate Correctional Facility ("Downstate") ("Lt. Coffy"); Superintendent of Downstate Ada Perez ("Perez")[3]; Lieutenant Phipps of Downstate ("Lt. Phipps"); Captain Caveleri of Downstate ("Capt. Caveleri"); and C.O. King, a correction officer at Downstate ("C.O. King").

Plaintiff seeks damages in the amount of thirty million ($30,000,000) dollars for the deprivation of his "right to access the courts, [S]ixth Amendment, false imprisonment, falsifying a state document, [and] slander."[4]

---

[2]     In my February 28, 2011 Opinion and Order (Docket # 18), I dismissed and terminated all claims against Fischer because of his lack of personal involvement.  Because Richardson was not granted leave to amend his Complaint as to Fischer, he is dismissed from this action with prejudice. See Docket Entries 16 & 19.

[3]     The correct spelling of defendant Ada "Parez" is "Perez."

[4]     Compl. at 2. In defendants' Memorandum of Law in Support of Defendants' Motion to Dismiss the Amended Complaint ("Def. Mem."), defendants argue that "plaintiff's purported claims for violation of his Sixth Amendment rights, false imprisonment, falsifying a state document, and slander are more properly asserted as allegations of deprivation of plaintiff's due process rights under the Fourteenth Amendment." Def. Mem. at 5.  In order to raise the strongest arguments that plaintiff's Complaint suggests, I will accept defendants' suggestion in part.  Specifically plaintiff's Sixth Amendment, falsified documents and slander claims will be analyzed under the rubric of due process.  However, plaintiff's false imprisonment claim will also be reviewed as an Eighth Amendment cruel and unusual punishment claim.

Defendants now move to dismiss Richardson's claims pursusant to Federal Rule of Civil Procedure 12(b)(6) on the following grounds: (1) failure to state a right of access to the courts claim; (2) Richardson's due process claims are barred and meritless; (3) Perez has no personal involvement; and (4) defendants are entitled to qualified immunity.[5]  For the reasons stated below, defendants' motion to dismiss is granted but plaintiff is granted leave to amend.

## II.    BACKGROUND

Dewayne Richardson is presently an inmate at Southport Correctional Facility.  On February 19, 2010, while incarcerated at Downstate, Lt. Coffy ordered Lt. Phipps to search Richardson's cell.[6]  Instead, C.O. King conducted the search.[7]  Richardson was not present during the search of his cell.[8]  Richardson alleges that C.O. King searched, read and confiscated his legal paperwork including a U.C.C. 1 form, an acknowledgment form from the Governor's office, a completed power of attorney, and documents that Richardson was using to appeal

---

[5]      *See* Def. Mem. at 2.

[6]      *See* Compl. at 3.

[7]      *See id.*

[8]      *See id.*

his conviction.[9]  Richardson alleges that DOCS lost his legal paperwork, thereby

hindering him from filing his appeal.[10]

### A.    The Misbehavior Report

After the search of Richardson's cell, Lt. Phipps filed a Misbehavior

Report (the "Report") dated February 19, 2010.  The Report cites violations of

rules 113.30 and 107.21 of the *DOCS Inmate Rules, Penalties and Outline of*

*Procedures* for possession of unauthorized U.C.C. materials and unauthorized

liens.[11]  The Report indicated that DOCS had been aware of an inmate scheme "to

fraudulently utilize provisions of the Uniform Commercial Code (U.C.C.) to file

---

[9]    *See id.*

[10]    *See id.*

[11]    *See* 2/19/10 Inmate Misbehavior Report ("the Report"), Ex. J to
Plaintiff's Memorandum in Opposition to Defendants' Motion to Dismiss ("Opp.
Mem.").  I will consider the factual allegations contained in plaintiff's opposition
papers to the extent they are consistent with the allegations in the Complaint.  "In
general, a court may not look outside the pleadings when reviewing a 12(b)(6)
motion to dismiss.  However, the mandate to read the papers of *pro se* litigants
generously makes it appropriate to consider plaintiff's additional materials, such as
his opposition memorandum."  *Burgess v. Goord*, No. 98 Civ. 2077, 1999 WL
33458, at *1 n.1 (S.D.N.Y. Jan. 28, 1999) (quotation marks and citation omitted).
*See also Cusamano v. Sobek*, 604 F. Supp. 2d 416, 461 (N.D.N.Y. 2009) ("[T]he
mandate to read the papers of *pro se* litigants generously makes it appropriate to
consider a plaintiff's papers in opposition to a defendant's motion to dismiss as
effectively amending the allegations of the plaintiff's complaint, to the extent that
those factual assertions are consistent with the allegations of the plaintiff's
complaint.") (citations omitted).

baseless liens against DOCS employees and local, state, and federal government."[12] Because of this scheme, inmates were prohibited from possessing any U.C.C. documents and forms.[13]  The Report states that during the search of Richardson's cell, U.C.C. materials were specifically targeted due to information that Richardson had filed U.C.C liens with the Internal Revenue Service using his copyrighted name.[14]  Further, the Report states that the search revealed U.C.C forms and filings, which indicated that Richardson was actively filing false liens and instruments against county, state and federal employees totaling $93,600,000.[15]  Plaintiff alleges that the Report filed by Lt. Phipps was false and that there was insufficient evidence to support a charge that he filed false liens.[16]  He instead alleges that the U.C.C. documents were his personal paperwork regarding the incorporation and copyright of his name "which [are] part of [his] credentials."[17]

### B. Richardson's Grievance to the Inmate Grievance Resolution Committee and Subsequent Disciplinary Hearing

---

[12]     Report at 1.

[13]     *See id.*

[14]     *See id.*

[15]     *See id.*

[16]     *See* Compl. at 4.

[17]     *Id.*

On February 29, 2010, Richardson filed a grievance with the Inmate Grievance Resolution Committee ("IGRC").[18]    In the Grievance Report, Richardson claims he has been the victim of discrimination, and requests that he be freed from his false imprisonment in SHU and seeks the return of his legal paperwork, files and records.[19]   Additionally, Richardson explains his legitimate reason for having U.C.C. forms.[20]   On March 17, 2010, the IGRC denied the grievance as non-grievable.[21]   Defendants do not argue with Richardson's claim that he has exhausted his administrative remedies.[22]

Richardson's Tier III disciplinary hearing began on February 25, 2010 and concluded on March 5, 2010.[23]  The hearing was presided over by Cpt. Cavaleri.[24]   Richardson alleges that Lt. Phipps misrepresented the nature of the

---

[18]       *See* Inmate Grievance Complaint "Grievance Report", dated 2/29/10, Ex. A to Compl.

[19]       *See id.* at 2.

[20]       *See id.*

[21]       *See* Compl. at 2.

[22]       *See* Def. Mem. at 4.

[23]       *See* Inmate Request for Tape of 3/5/10 Tier III hearing, dated 12/8/10, Ex. H to Opp. Mem.

[24]       *See* Compl. at 3.

U.C.C. documents during the hearing.[25]   Richardson also alleges that the paperwork taken from him was part of an ongoing case and that its confiscation violated department policy and procedure.  Moreover, Richardson alleges that there was insufficient evidence to support a charge that he filed any false liens.[26]

As a result of the disciplinary proceeding for filing false U.C.C. liens, Richardson was sentenced to eighteen (18) months in the Special Housing Unit ("SHU"), a six month loss of good time credit which could affect his release date and the loss of certain privileges including recreation time, commissary, and phone and mail privileges.[27]   He allegedly lost the limited liberties enjoyed as a prisoner as a result of his SHU confinement for twenty-three hours a day in a cell, including the inability to work, attend educational and vocational programs, watch television, and interact with other prisoners.[28]

Richardson alleges that Perez was personally involved in the violations because she "has a personal obligation to not just her officers but to me to[o], to make sure that the [facility] is being r[u]n according to directive and

---

[25]     See id. at 4.

[26]     See id.

[27]     See id.

[28]     See id at 3.

policy . . ."[29]  Richardson alleges that Cpt. Cavaleri was personally involved

because he conducted the disciplinary hearing.[30]

Richardson seeks compensatory damages for changes to his prison

conditions as a result of his sentence for the filing of false U.C.C. liens.

## III.   LEGAL STANDARDS

### A.   Motion to Dismiss

In deciding a motion to dismiss pursuant to Federal Rule of Civil

Procedure 12(b)(6), the court must "accept as true all of the factual allegations

contained in the complaint"[31] and "draw all reasonable inferences in [the]

plaintiff's favor."[32]  However, the court need not accord "[l]egal conclusions,

deductions or opinions couched as factual allegations . . . a presumption of

truthfulness."[33]  To survive a Rule 12(b)(6) motion to dismiss, the allegations in the

---

[29]   *Id*.

[30]   *See id.*

[31]   *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 572 (2007).  *Accord Rescuecom Corp. v. Google Inc.*, 562 F.3d 123, 127 (2d Cir. 2009).

[32]   *Ofori-Tenkorang v. American Int'l Group, Inc.*, 460 F.3d 296, 298 (2d Cir. 2006).

[33]   *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007) (quotation marks omitted).

complaint must meet a standard of "plausibility."[34]  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[35] Plausibility "is not akin to a probability requirement," rather plausibility requires "more than a sheer possibility that a defendant has acted unlawfully."[36]

When determining the sufficiency of a claim under Rule 12(b)(6), a court is generally required to consider only the allegations in the complaint.[37] However, a court is allowed to consider documents outside the pleading if the documents are integral to the pleading or if they are subject to judicial notice.[38]  A *pro se* plaintiff is entitled to  have his pleadings held to "less stringent standards than formal pleadings drafted by lawyers."[39]  Accordingly, a *pro se* plaintiff's

---

[34]     *Twombly*, 550 U.S. at 564.

[35]     *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quotation marks omitted).

[36]     *Id.* (quotation marks omitted).

[37]     *See Global Network Commc'ns, Inc. v. City of N.Y.*, 458 F.3d 150, 156 (2d Cir. 2006) (vacating district court's dismissal of plaintiff's complaint where the court relied on materials outside of the complaint).

[38]     *See ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).

[39]     *Haines v. Kerner,* 404 U.S. 519, 520 (1972).

papers should be interpreted "to raise the strongest arguments that they suggest."[40]

These same principles apply to briefs and opposition papers submitted by *pro se*

litigants.[41]

### B.     Section 1983

Section 1983 states, in relevant part, that

> [e]very person who, under color of any statute, ordinance,
> regulation, custom, or usage, of any State or Territory or the
> District of Columbia, subjects, or causes to be subjected, any
> citizen of the United States or other person within the
> jurisdiction thereof to the deprivation of any rights,
> privileges, or immunities secured by the Constitution and
> laws, shall be liable to the party injured in an action at law,
> suit in equity, or other proper proceeding for redress . . .[42]

Section 1983 "does not create a federal right or benefit;  it simply provides a

mechanism for enforcing a right or benefit established elsewhere."[43]  "The purpose

of [section]1983 is to deter state actors from using the badge of their authority to

---

[40]     *MacPherson v. Coombe,* 174 F.3d 276, 280 (2d Cir. 1999).

[41]     *See Ortiz v. McBride*, 323 F.3d 191, 194 (2d Cir. 2003).  *Accord Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994).

[42]     42 U.S.C. § 1983.

[43]     *Morris-Hayes v. Board of Educ. of Chester Union Free Sch. Dist.*, 423 F.3d 153, 159 (2d Cir. 2005) (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)).  *Accord  Gonzaga Univ. v. Doe*, 536 U.S. 273, 285 (2002) ("'[O]ne cannot go into court and claim a 'violation of § 1983' – for § 1983 by itself does not protect anyone against anything.'") (quoting *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 617 (1979)).

-10-

deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails."[44]

### 1.   Personal Involvement

Imposition of liability under section 1983 requires a defendant's direct involvement in the alleged constitutional violation.[45]  Thus, "[a] supervisory official cannot be liable solely on account of the acts or omissions of his or her subordinates."[46]  In 1995, the Second Circuit held that the personal involvement of a supervisory defendant may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of

---

[44]     *Wyatt v. Cole*, 504 U.S. 158, 161 (1992).

[45]      *See Wright v. Smith,* 21 F.3d 496, 501 (2d Cir. 1994) ("It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under §1983.'") (quoting *Moffitt v. Town of Brookfield,* 950 F.2d 880, 885 (2d Cir. 1991)).

[46]     *Bellamy v. Mount Vernon Hosp.,* No. 07 Civ. 1801, 2009 WL 1835939, at *4 (S.D.N.Y. June 26, 2009).

inmates by failing to act on information indicated that unconstitutional acts were occurring.[47]  However, in 2009, the Supreme Court held that  "[b]ecause vicarious liability is inapplicable to . . . [section] 1983 suits, a plaintiff must [prove] that each Government-official defendant, through the official's own individual actions, has violated the Constitution."[48]  "Accordingly only the first and third *Colon* factors have survived the Supreme Court's decision in *Iqbal*."[49]

## 2.  Favorable Termination Rule

In *Heck v. Humphrey*, the Supreme Court held that a section 1983 claim seeking money damages is not cognizable if a finding in favor of the plaintiff would necessarily invalidate a criminal conviction or prison disciplinary determination unless that "conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal . . . or called into question by a federal court's issuance of a writ of habeas corpus . . . ."[50] "The rule announced in *Heck v. Humphrey* thus applies whenever a prisoner

---

[47]    *See Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir. 1995).

[48]    *Iqbal*, 129 S. Ct. at 1948-49 (citations omitted) (explicitly rejecting the argument that "a supervisor's mere knowledge of his subordinate's discriminatory purpose amounts to the supervisor's violating the Constitution").

[49]    *Spear v. Hugles*, No. 08 Civ. 4026, 2009 WL 2176725, at *2 (S.D.N.Y. July 20, 2009).

[50]    512 U.S. 477, 487 (1994).  *Accord Phelan v. Hersh*,  No. 9:10-cv-0011, 2010 WL 277064, at *3 (N.D.N.Y. Jan. 20, 2010).

challenges the fact or length of his conviction or sentence. This includes situations in which an inmate challenges the denial of 'good time' credits, where such denial impacts the duration of his confinement."[51]  The Second Circuit has held that a prisoner who receives mixed sanctions affecting both the duration and conditions of confinement at a prison disciplinary hearing can proceed to challenge those sanctions, as long as the inmate agrees to waive any challenge to the sanction affecting the length of his confinement.[52]

### C.    Qualified Immunity

The Eleventh Amendment immunizes state agencies and officials acting in their official capacity from suit under section 1983.[53]  "[It] does not protect him from personal liability if he is sued in his 'individual' or 'personal' capacity."[54]  Agency officials performing discretionary functions are generally granted qualified immunity and are immune from suit provided that "'their conduct

---

[51]     *Phelan*, 2010 WL 277064, at *3.  *Accord Edwards v. Balisok*, 520 U.S. 641, 646-48 (1997).

[52]     *See Peralta v. Vasquez*, 467 F.3d 98,104 (2d Cir. 2006).

[53]     *See Will v. Michigan Dep't of State Police,* 491 U.S. 58, 71 (1989) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather a suit against the official's office.  As such, it is no different from a suit against the State itself.").

[54]      *Dawkins v. Gonyea*, 646 F. Supp. 2d 594, 605 (S.D.N.Y. 2009) (quoting *Farid v. Smith*, 850 F.2d 917, 921 (2d Cir. 1988)).

does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"[55]  The Second Circuit has held that "[a] right is clearly established if (1) the law is defined with reasonable clarity, (2) the Supreme Court or the Second Circuit has recognized the right, and (3) a reasonable defendant [would] have understood from the existing law that [his] conduct was unlawful."[56]  "Thus, government officials are entitled to qualified immunity at the dismissal stage only where it appears on the face of a plaintiff's complaint that they did not violate clearly established rights of which they should have known."[57]

### D.   Inmate's Access to the Courts

All persons, including prisoners, have a constitutional right of access to the courts.[58]  "To establish a constitutional violation based on denial of access to the courts, 'a plaintiff must show that the defendant's conduct was deliberate and malicious, and that the defendant's actions resulted in an actual injury to the

---

[55]   *Luna v. Pico*, 356 F.3d 481, 490 (2d Cir. 2004) (quoting *Wilson v. Layne,* 526 U.S. 603, 614 (1999)).

[56]   *Id.* (quotation marks and citation omitted).

[57]   *Percinthe v. Julien,* No. 08 Civ. 893, 2008 WL 4489777, at *3 (S.D.N.Y. Oct. 4, 2008).

[58]    *See Monsky v. Moraghan*, 127 F.3d 243, 246 (2d Cir. 1997).

-14-

plaintiff.'"[59]  For example, to show actual injury, a plaintiff must demonstrate that

"a defendant took or was responsible for actions that 'hindered [a plaintiff's]

efforts to pursue a legal claim.'"[60]  Additionally, the injury requirement is satisfied

by only certain types of frustrated legal claims, including direct and collateral

attacks on an inmate's sentence, such as petitions for federal and state habeas

relief, and civil rights claims challenging confinement conditions.[61]

### E.    Procedural Due Process Claims

#### 1.    False Misbehavior Reports

In order to state a procedural due process claim pursuant to the

Fourteenth Amendment, an inmate must first establish that he enjoys a protected

liberty interest.  "[A] prison inmate has no general constitutional right to be free

from being falsely accused in a misbehavior report."[62]  In order to maintain a

cognizable claim against correction officers for filing a false misbehavior report,

" a plaintiff must be able to show either: (1) that he was disciplined without

_____

[59]    *Bellezza v. Holland,* 730 F. Supp. 2d 311, 314 (S.D.N.Y. 2010)
*(*quoting *Collins v. Goord*, 581 F. Supp. 2d 563, 573 (S.D.N.Y. 2008)).

[60]    *Graham v. Perez*, 121 F. Supp. 2d 317, 323 (S.D.N.Y. 2000) (quoting
*Monsky*, 127 F.3d at 247).

[61]    *See Lewis v. Casey*, 518 U.S. 343, 354-55 (1996).

[62]    *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997) (citing
*Freeman v. Rideout*, 808 F. 2d 949, 951 (2d Cir. 1986)).

adequate due process, as a result of the report; or (2) that the report was issued in retaliation for exercising a constitutionally protected right."[63]

###    2.    Disciplinary Proceedings

In order to maintain a due process claim with respect to a prisoner's disciplinary proceeding, "a plaintiff must establish (1) possession of a liberty interest and (2) deprivation by defendants of that interest as a result of insufficient process."[64]  A prisoner can only establish a due process claim in connection with prison disciplinary proceedings resulting in segregative confinement or loss of privileges by demonstrating that the sanctions "impose[d] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."[65]  "The duration of SHU confinement is a relevant, but not the only, factor with respect to whether such confinement is 'atypical.'"[66]  "Generally, periods of confinement in SHU lasting fewer than 101 days have been found not to amount to atypical and significant hardship."[67]  "For a prison disciplinary proceeding to provide due

---

[63]    *Allen v. City of New York*, 480 F. Supp. 2d 689, 721 (S.D.N.Y.  2007).

[64]    *Dawkins*, 646 F. Supp. 2d at 605.

[65]    *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

[66]    *Alicea v. Howell*, 387 F. Supp. 2d 227, 231 (W.D.N.Y. 2005) (citing *Ortiz*, 380 F.3d at 654-55).

[67]    *Dawkins*, 646 F. Supp. 2d at 606.  *Accord Ortiz,* 380 F.3d at 655 (prison conditions such as "solitary confinement for twenty-three hours a day,

process there must be, among other things, 'some evidence' to support the sanction imposed."[68]

**F.      Leave to Amend the Complaint**

Under Federal Rule of Civil Procedure 15(a), leave to amend a complaint should be "freely given when justice so requires."[69]  A court should not dismiss a *pro se* complaint for failure to state a claim  "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated."[70]  Thus "it is well established that leave to amend a complaint need not be granted when amendment would be futile."[71]

**IV.    DISCUSSION**

**A.      Qualified Immunity**

Reading the Complaint liberally, the individual defendants have been sued in both their official and individual capacities.  Defendants argue

---

provid[ing] one hour of exercise in the prison yard per day, and permitt[ing] two showers per week" for less than 101 days does not amount to atypical and significant hardship).

[68]      *Ortiz*, 380 F.3d at 655.

[69]      Fed. R. Civ. P. 15(a).

[70]      *Cuoco v. Moritsugu*, 222 F. 3d 99, 112 (2d Cir. 2000) (quotation marks and citations omitted).

[71]      *Ellis v. Chao*, 336 F.3d 114, 127 (2d Cir. 2003).

that they are entitled to qualified immunity based on facts not pled in the

Complaint.   While qualified immunity may be appropriate in this action, a

determination should await factual development about what administrative

procedures were used.[72]   Therefore, defendants' motion to dismiss based on

qualified immunity is denied.

### B.   Personal Involvement of Perez

Defendants argue that Perez cannot be held liable for the

alleged violations based solely on her supervisory role as the Superintendent

at Downstate.  Richardson does not allege that Perez personally participated

in the taking of his legal documents, but instead alleges that Perez  "has a

personal obligation" to him to ensure that the prison is properly run. [73]

Richardson has failed to plead that Perez was personally involved in any

alleged constitutional violation.  Accordingly, defendants' motion to dismiss

all claims against Perez is granted.

### C.   Access to the Courts

Defendants argue that Richardson fails to state a claim for denial of

his right of access to the courts.  Plaintiff alleges he was denied his constitutional

---

[72]     *See Schultz v. Egan*, 103 Fed. App'x. 437, 442 (2d Cir. 2004).

[73]     Compl. at 3.

right of access to the courts because his legal paperwork was confiscated.   Plaintiff has failed to sufficiently plead that there was any malice in the confiscation of his documents.  Although Richardson makes a conclusory allegation that the confiscation of his legal papers hindered his ability to file an appeal, he does not explain how he was hindered, or how he suffered any actual harm.  Because, at present, Richardson has not adequately pled that he was denied access to the courts, defendants' motion to dismiss that claim is granted with leave to amend.

### D.     Due Process Claims

#### 1.     Misbehavior Report

Plaintiff alleges that his due process rights were violated due to the allegedly false misbehavior report.  However, the filing of a false misbehavior report does not implicate plaintiff's due process rights.  Even assuming, *arguendo*, that the misbehavior report is false, because inmates do not have a constitutional right to recover for the filing of false misbehavior reports, there is no violation. Therefore, defendants' motion to dismiss Richardson's due process claim regarding the misbehavior report is granted.

#### 2.     Disciplinary Proceeding

Defendants argue that Richardson's due process claim regarding the disciplinary proceeding is barred due to the "favorable termination rule."

-19-

Construed liberally, Richardson is challenging a disciplinary proceeding that resulted in mixed sanctions - those that affect the conditions of his confinement (his sentence of SHU confinement and the loss of certain privileges) and those that affected the duration of his confinement (the six month loss of good time credit). He has not, however, at this time waived any challenge to the six month loss of good time credit, which implicates the length of his confinement. Therefore, Richardson's claim regarding the results of the disciplinary hearing is barred.

Even if Richardson's disciplinary hearing due process claim was not barred, it fails to state a claim. Richardson alleges that as a result of the disciplinary proceeding, he was sentenced to confinement in SHU, loss of good time credit and a loss of commissary, mail, and telephone privileges. Richardson was sentenced to eighteen months in SHU, which is sufficiently long to raise a protected liberty interest.

Although Richardson has adequately pled a protected liberty interest, he must also allege that he was deprived of a liberty interest as a result of insufficient process.[74] Richardson, however, only offers conclusory statements that there was insufficient evidence to support the allegations that he filed false liens, that the disposition of Capt. Cavaleri shows his maliciousness, and that his due

---

[74]    *See Dawkins*, 646 F. Supp. 2d at 607.

process rights were violated.  Richardson does not challenge any procedural

inadequacies associated with the hearing.  He merely does not agree with its

outcome.  Because Richardson has failed to plead insufficient process during the

disciplinary hearing, defendants' motion to dismiss this claim is granted with leave

to amend.

### E.      Cruel and Unusual Punishment

Construing Richardson's Complaint liberally, plaintiff's "false

imprisonment" claim is interpreted as setting forth an Eighth Amendment cruel and

unusual punishment claim resulting from his extended (eighteen month)

confinement in SHU.

> To demonstrate that the conditions of his confinement
> constituted cruel and unusual punishment, the plaintiff must
> satisfy both an objective test and a subjective test.  First, the
> plaintiff must demonstrate that the conditions of his
> confinement result in unquestioned and serious
> deprivations of basic human needs.  Second, the plaintiff
> must demonstrate that the defendants imposed those
> conditions with deliberate indifference.[75]

As previously discussed, eighteen months in SHU confinement may

be considered an atypical and extreme sentence, especially for a non-violent

offense.  Further, Richardson has satisfied the exhaustion requirement with regards

---

[75]      *Welch v. Bartlett*, 125 Fed. App'x 340, 342 (2d Cir. 2005) (quotation
marks and citations omitted).

to this claim.  Richardson appealed the original thirty-six (36) month sentence, which was reduced to eighteen (18) months.  Additionally, Richardson filed an IGRC grievance in which he sought to be "freed [sic] from [his] false imprisonment of the SHU."   Richardson's grievance was dismissed on the ground that the disciplinary sanctions are "not grievable."  As such, Richardson's cruel and unusual punishment claim is deemed fully exhausted and survives defendants' motion to dismiss.

### F.    Leave to Amend

Richardson cannot amend his Complaint to cure his claims against Perez due to her lack of personal involvement.  Therefore, plaintiff's claims against Perez are dismissed with prejudice.  Further, Richardson may not amend his Complaint as to the misbehavior report.  Because inmates do not have a constitutional right to be free from the filing of false misbehavior reports, further amendment to this claim would be futile.

Richardson may amend his Complaint as to his denial of access to the courts claim.  To sufficiently plead this claim, plaintiff must show actual injury as a result of the confiscation of his legal and U.C.C. paperwork. Additionally, Richardson would have to plead, with some specificity, that defendants' actions were in some way deliberate and malicious.

-22-

Richardson may also amend his Complaint as to his due process claim regarding the disciplinary proceeding.  In order to adequately amend this claim, Richardson would have to waive any challenge to the sanction affecting the length of his confinement, namely his loss of good time credit.  Moreover, to state a due process claim, Richardson must adequately allege insufficient process with respect to the disciplinary hearing.

Plaintiff may amend his denial of court access and due process claims within thirty (30) days of the date of this Order.  If plaintiff submits a timely Second Amended Complaint, this Court will review it to determine whether plaintiff has adequately pled the surviving claims.

## V.   CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is granted as to all claims.   The Clerk of the Court is directed to close this motion (Docket No. 23).  A status conference is scheduled for October 26, 2011at 4:30 p.m.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated: New York, New York
      September 13, 2011

**-Appearances-**

**Plaintiff (Pro Se):**

Dewayne Richardson
ID # 10-A-0404
Southport Correctional Facility
P.O. Box 2000
Pine City, New York 14871-2000

**For Defendants:**

Christina Okereke
Assistant Attorney General
120 Broadway, 24th Floor
New York, New York 10271
(212) 416-8746