**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------X

DEWAYNE RICHARDSON,

        **Plaintiff,**

    **- against -**

STATE OF NEW YORK, LT. COFFY, LT.
PHIPPS, LT. BUYS, CPT. CAVALERI,
C.O. KING,

        **Defendants.**
------------------------------------------------------X

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED:  1/9/12
```

**OPINION AND ORDER**

**10 Civ. 6137 (SAS)**

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.   INTRODUCTION

        On September 13, 2011, this Court issued an Opinion and Order (the "September 13, 2011 Order") dismissing, without prejudice, plaintiff's Amended Complaint for failure to state a claim.[1]  Dewayne Richardson, presently incarcerated and proceeding *pro se*, filed a Second Amended Complaint on October 13, 2011, alleging violations of his constitutional rights pursuant to section 1983 of Title 42 of the United States Code ("section 1983").  Defendants include the State of New York ("New York"); Lieutenant Coffy of Downstate

--------------------

[1]    *See Richardson v. Department of Corr. of N.Y.S.*, No. 10 Civ. 6137, 2011 WL 4091491, at *7 (S.D.N.Y. Sept. 13, 2011) (granting leave to amend plainitiff's denial of court access and due process claims).

Correctional Facility ("Downstate") ("Lt. Coffy"); Lieutenant Phipps of Downstate

("Lt. Phipps"); Captain Caveleri of Downstate ("Capt. Caveleri"); C.O. King, a

correction officer at Downstate ("C.O. King"); and Lieutenant Buys of Downstate

("Lt. Buys").  Plaintiff seeks damages in the amount of thirty million

($30,000,000) dollars for the deprivation of his "right to access the courts, [S]ixth

Amendment, false imprisonment, [and] slander. . ."[2]

   Additionally, in a letter to the Court dated October 15, 2011, plaintiff

seeks reconsideration that part of the Order dismissing his false misbehavior report

claim[3], arguing that he is protected by "department policy and procedure."[4]  At the

October 26, 2011 conference, I granted defendants' request to renew their motion

to dismiss based on their prior briefings.  For the reasons stated below, plaintiff's

motion for reconsideration is denied and defendants' motion to dismiss is granted.

## II. BACKGROUND[5]

   Richardson is currently incarcerated at Great Meadow Correctional

---

[2]  Second Amended Complaint ("SAC" or "Compl.") at 2.

[3]  *See Richardson*, 2011 WL 4091491, at *6 (finding no due process violation because inmates do not have a constitutional right to recover for the filing of false misbehavior reports).

[4]  Richardson's 10/15/11 Letter to the Court.

[5]  Familiarity with the September 13, 2011 Order is assumed.

Facility.  On February 19, 2010, while incarcerated at Downstate, Lt. Coffy

ordered Lt. Phipps to search Richardson's cell.[6]  Instead, C.O. King conducted the

search in the absence of Richardson.[7]  Richardson alleges that C.O. King, Lt.

Phipps and Lt. Buys confiscated his legal paperwork including documents that

Richardson was using to appeal his conviction.[8]  Richardson alleges that the New

York State Department of Corrections ("DOCS") kept his legal paperwork, thereby

hindering him from filing his appeal.[9]

A.      **The Misbehavior Report**

After the search of Richardson's cell, Lt. Phipps filed a Misbehavior

Report dated February 19, 2010.  The Report cites violations of Rules 113.30 and

107.21 of the *DOCS Inmate Rules, Penalties and Outline of Procedures* for

possession of unauthorized Uniform Commercial Code ("U.C.C.") materials and

unauthorized liens.[10]  The Report indicated that DOCS had been aware of an

---

[6]      *See* Compl. at 3.

[7]      *See id.*

[8]      *See id* at 4.

[9]      *See id.*

[10]      *See* 2/19/10 Inmate Misbehavior Report ("the Report"), Ex. J to
Plaintiff's Memorandum in Opposition to Defendants' Motion to Dismiss ("Opp.
Mem.").  I will consider the factual allegations contained in plaintiff's opposition
papers to the original motion to dismiss to the extent they are consistent with the
allegations in the Amended Complaint.  "In general, a court may not look outside

-3-

inmate scheme "to fraudulently utilize provisions of the Uniform Commercial Code . . . to file baseless liens against DOCS employees and local, state, and federal government."[11]  Because of this scheme, inmates were prohibited from possessing any U.C.C. documents and forms.[12]  The Report states that during the search of Richardson's cell, U.C.C. materials were specifically targeted because DOCS knew that Richardson had filed U.C.C liens with the Internal Revenue Service using his copyrighted name.[13]  Further, the Report states that the search revealed U.C.C forms and filings, which indicated that Richardson was actively filing false liens and instruments against county, state and federal employees totaling $93,600,000.[14]  Plaintiff claims that the allegations contained in the Report

_____

the pleadings when reviewing a 12(b)(6) motion to dismiss.  However, the mandate to read the papers of *pro se* litigants generously makes it appropriate to consider plaintiff's additional materials, such as his opposition memorandum." *Burgess v. Goord*, No. 98 Civ. 2077, 1999 WL 33458, at *1 n.1 (S.D.N.Y. Jan. 28, 1999) (quotation marks and citation omitted).  *See also Cusamano v. Sobek*, 604 F. Supp. 2d 416, 461 (N.D.N.Y. 2009) ("[T]he mandate to read the papers of *pro se* litigants generously makes it appropriate to consider a plaintiff's papers in opposition to a defendant's motion to dismiss as effectively amending the allegations of the plaintiff's complaint, to the extent that those factual assertions are consistent with the allegations of the plaintiff's complaint.") (citations omitted).

[11]    Report at 1.

[12]    *See id.*

[13]    *See id.*

[14]    *See id.*

filed by Lt. Phipps were fabricated.[15]

**B.    Richardson's Grievance to the Inmate Grievance Resolution Committee and Subsequent Disciplinary Hearing**

On February 29, 2010, Richardson filed a grievance with the Inmate Grievance Resolution Committee ("IGRC").[16]   In his Grievance, Richardson claimed he had been the victim of discrimination, requested that he be freed from his false imprisonment in the Special Housing Unit ("SHU"), and sought the return of his legal paperwork, files and records.[17]   Additionally, Richardson offered a legitimate reason for his possession of the U.C.C. forms.[18]   On March 17, 2010, the IGRC denied the grievance as non-grievable.[19]   Defendants do not dispute that Richardson has exhausted his administrative remedies.[20]

Richardson's Tier III disciplinary hearing began on February 25,

---

[15]     *See* Compl. at 4.

[16]     *See* 2/29/10 Inmate Grievance Complaint ("Grievance Complaint"), Ex. A to Compl.

[17]     *See id.* at 2.

[18]     *See id.*

[19]     *See* Compl. at 3.

[20]     *See* Defendants' Memorandum of Law in Support of Defendants' Motion to Dismiss the First Amended Complaint ("Def. Mem.") at 4.

2010, and concluded on March 5, 2010.[21]   The hearing was presided over by Capt. Cavaleri.[22]   Richardson alleges that during the hearing Lt. Phipps misrepresented the nature of the U.C.C. documents Richardson allegedly possessed.[23]   Moreover, Richardson alleges that there was insufficient evidence to support a charge that he filed any false liens.[24]

As a result of the disciplinary proceeding for filing false U.C.C. liens, Richardson was sentenced to eighteen (18) months in the Special Housing Unit ("SHU"), a six month loss of good time credit, and the loss of certain privileges including recreation time, commissary, and phone and mail privileges.[25]   As a result of his SHU confinement for twenty-three hours a day in a cell, Richardson allegedly lost the limited liberties enjoyed by a prisoner, including the inability to work, attend educational and vocational programs, watch television, and interact with other prisoners.[26]   Richardson seeks compensatory damages for changes to his

---

[21]      *See* 12/8/10 Inmate Request for Tape of 3/5/10 Tier III hearing, Ex. H to Opp. Mem.

[22]      *See* Compl. at 7.

[23]      *See id.*

[24]      *See id.*

[25]      *See id.* at 6.  The loss of good time credit could affect Richardson's release date.

[26]      *See id.*

prison conditions as a result of the sentence he received for filing false U.C.C. liens.

In his Second Amended Complaint, Richardson elaborates on his allegation that he explained to C.O. King that he needed the confiscated legal documents for his appeal.[27]  Richardson alleges that  C.O. King responded that he no longer had the documents, and that they had been given to Lt. Phipps and Lt. Buys.  Richardson does not plead any other new allegations in his Second Amended Complaint and simply restates his earlier claims.

### C.   Procedural History

In the September 13, 2011 Order, this Court denied Richardson leave to amend his Complaint as to the misbehavior report claim.   Richardson was given leave to amend his denial of access to the courts claim and was instructed on what he would need to allege in order to sufficiently plead this claim.[28]  Richardson was also permitted to amend his due process claim regarding the disciplinary

---

[27]     *See id*. at 3.

[28]     *See Richardson*, 2011 WL 4091491, at *7 ("To sufficiently plead this claim, plaintiff must show actual injury as a result of the confiscation of his legal and U.C.C. paperwork.  Additionally, Richardson would have to plead, with some specificity, that defendants' actions were in some way deliberate and malicious.").

proceeding.[29]

## III.   LEGAL STANDARD

### A.   Motion for Reconsideration

Motions for reconsideration are governed by Local Rule 6.3 and are committed to the sound discretion of the district court.[30]  A motion for reconsideration is appropriate where "'the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court.'"[31]  A motion for reconsideration may also be granted to "'correct a clear error or prevent manifest injustice.'"[32]

---

[29]     See id. ("In order to adequately amend this claim, Richardson would have to waive any challenge to the sanction affecting the length of his confinement, namely his loss of good time credit.  Moreover, to state a due process claim, Richardson must adequately allege insufficient process with respect to the disciplinary hearing.").

[30]     See Patterson v. United States, No. 04 Civ. 3140, 2006 WL 2067036, at *1 (S.D.N.Y. July 26, 2006 ) ("The decision to grant or deny a motion for reconsideration is within the sound discretion of the district court.") (citing McCarthy v. Manson, 714 F.2d 234, 237 (2d Cir. 1983)).

[31]     In re BDC 56 LLC, 330 F.3d 111, 123 (2d Cir. 2003) (quotation marks omitted).

[32]     RST (2005) Inc. v. Research in Motion Ltd., No. 07 Civ. 3737, 2009 WL 274467, at *1 (S.D.N.Y. Feb. 4, 2009) (quoting Virgin Atl. Airways, Ltd. v. National Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992)).

The purpose of Local Rule 6.3 is to "'ensure the finality of decisions and to prevent the practice of a losing party examining a decision and then plugging the gaps of a lost motion with additional matters.'"[33]  Local Rule 6.3 must be "narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have been considered fully by the Court."[34]  Courts have repeatedly been forced to warn counsel that such motions should not be made reflexively to reargue "'those issues already considered when a party does not like the way the original motion was resolved.'"[35]  A motion for reconsideration is not an "opportunity for making new arguments that could have been previously

---

[33]     *Grand Crossing, L.P. v. United States Underwriters Ins. Co.*, No. 03 Civ. 5429, 2008 WL 4525400, at *3 (S.D.N.Y. Oct. 6, 2008) (quoting *S.E.C. v. Ashbury Capital Partners*, No. 00 Civ. 7898, 2001 WL 604044, at *1 (S.D.N.Y. May 31, 2001)).  *Accord Commerce Funding Corp. v. Comprehensive Habilitation Servs., Inc.*, 233 F.R.D. 355, 361 (S.D.N.Y. 2005) ("[A] movant may not raise on a motion for reconsideration any matter that it did not raise previously to the court on the underlying motion sought to be reconsidered.").

[34]     *United States v. Treacy*, No. 08 CR 366, 2009 WL 47496, at *1 (S.D.N.Y. Jan. 8, 2009) (quotation marks and citation omitted).  *Accord Shrader v. CSX Transp. Inc.*, 70 F.3d 255, 257 (2d Cir. 1995) (holding that a court will deny the motion when the movant "seeks solely to relitigate an issue already decided").

[35]     *Makas v. Orlando*, No. 06 Civ. 14305, 2008 WL 2139131, at *1 (S.D.N.Y. May 19, 2008) (quoting *In re Houbigant, Inc.*, 914 F. Supp. 997, 1001 (S.D.N.Y. 1996)).

advanced,"[36] nor is it a substitute for appeal.[37]

**B.     Motion to Dismiss**

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must "accept as true all of the factual allegations contained in the complaint"[38] and "draw all reasonable inferences in [the] plaintiff's favor."[39] However, the court need not accord "[l]egal conclusions, deductions or opinions couched as factual allegations . . . a presumption of truthfulness."[40] To survive a Rule 12(b)(6) motion to dismiss, the allegations in the complaint must meet a standard of "plausibility."[41] A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the

---

[36] *Associated Press v. United States Dep't of Defense*, 395 F. Supp. 2d 17, 19 (S.D.N.Y. 2005).

[37] *See Grand Crossing,* 2008 WL 4525400, at *3.

[38] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 572 (2007). *Accord Rescuecom Corp. v. Google Inc.*, 562 F.3d 123, 127 (2d Cir. 2009).

[39] *Ofori-Tenkorang v. American Int'l Group, Inc.*, 460 F.3d 296, 298 (2d Cir. 2006).

[40] *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007) (quotation marks omitted).

[41] *Twombly*, 550 U.S. at 564.

reasonable inference that the defendant is liable for the misconduct alleged."[42]

Plausibility "is not akin to a probability requirement," rather plausibility requires

"more than a sheer possibility that a defendant has acted unlawfully."[43]

      When determining the sufficiency of a claim under Rule 12(b)(6), a

court is generally required to consider only the allegations in the complaint.[44]

However, a court is allowed to consider documents outside the pleading if the

documents are integral to the pleading or if they are subject to judicial notice.[45]

Moreover, a *pro se* plaintiff is entitled to have his pleadings held to "less stringent

standards than formal pleadings drafted by lawyers."[46]  Accordingly, a *pro se*

plaintiff's papers should be interpreted "to raise the strongest arguments that they

suggest."[47]   These same principles apply to briefs and opposition papers submitted

---

[42]    *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quotation marks and citation omitted).

[43]    *Id.* (quotation marks and citation omitted).

[44]    *See Global Network Commc'ns, Inc. v. City of N.Y.*, 458 F.3d 150, 156 (2d Cir. 2006) (vacating district court's dismissal of plaintiff's complaint where the court relied on materials outside of the complaint).

[45]    *See ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).

[46]    *Haines v. Kerner,* 404 U.S. 519, 520 (1972).

[47]    *MacPherson v. Coombe,* 174 F.3d 276, 280 (2d Cir. 1999).

by *pro se* litigants.[48]

## IV.    DISCUSSION

### A.    Plaintiff's Motion for Reconsideration of Misbehavior Report Ruling

Richardson asks this Court to reconsider its dismissal of his claim regarding the alleged false misbehavior report.  As explained in the September 13, 2011 Order, the filing of a false misbehavior report does not implicate plaintiff's due process rights.  Therefore, there is no constitutional violation. Moreover, there is no indication, other than his conclusory allegations, that the Misbehavior Report was false.  In his grievance to the IGRC, Richardson acknowledged that he was in possession of U.C.C materials, but claimed that this was not a violation.  However, as stated in the Misbehavior Report, Rule 113.30 prohibits the possession of any unauthorized U.C.C materials.  Because Richardson suffered no constitutional injury, his motion to reconsider this claim is denied.

### B.    Defendants' Renewed Motion to Dismiss

#### 1.    Access to the Courts

Plaintiff alleges he was denied his constitutional right of access to the courts because his legal paperwork was confiscated.  Richardson alleges that the

---

[48]    *See Ortiz v. McBride*, 323 F.3d 191, 194 (2d Cir. 2003);  *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994).

confiscated paperwork related to his Criminal Procedure Law ("CPL") § 440.0 motion. Further, Richardson alleges that because these documents were confiscated, his motion was denied without prejudice. Richardson does acknowledge that he was granted the opportunity to resubmit his motion. Because the documents Richardson needed to support his legal arguments were retained by DOCS, Richardson alleges that he was unable to resubmit his motion.[49] However, Richardson once again failed to identify the nature of the confiscated legal documents or why they were integral to his CPL § 440 motion. Moreover, there is no indication that Richardson attempted to obtain new copies of the confiscated documents in order to proceed with his appeal. Even assuming, *arguendo*, that Richardson sufficiently pled an actual injury, he has again failed to sufficiently plead that there was any malice in the confiscation of his documents by the officers. Because Richardson has not cured the deficiencies noted in the September 13, 2011 Order, defendants' renewed motion to dismiss Richardson's access to the courts claim is granted.

### 2.    Disciplinary Proceeding

In the September 13, 2011 Order, this Court noted that in order for Richardson to challenge a disciplinary proceeding that resulted in mixed sanctions

---

[49]    *See* Compl. at 4.

- those that affect the conditions of confinement (his sentence of SHU confinement and the loss of certain privileges) and those that affected the duration of confinement (his six month loss of good time credit), he must waive any challenge to the six month loss of good time credit, which implicates the length of his confinement.[50]  He has failed to do this.   Therefore, Richardson's claim regarding the results of the disciplinary hearing is again dismissed.

Additionally, the September 13, 2011 Order noted that Richardson must also allege that he was deprived of a liberty interest as a result of insufficient process.[51]  Richardson, again, only offers conclusory statements that the disposition of Capt. Cavaleri shows that he acted with malice,  and that Richardson's due process rights were therefore violated.  Richardson again fails to challenge any procedural inadequacies associated with the hearing.  Because Richardson has failed to plead insufficient process during the disciplinary hearing, defendants' renewed motion to dismiss this claim is granted.

### 3.    Cruel and Unusual Punishment

At the October 26, 2011 conference,  defendants argued that the Second Amended Complaint did not allege conditions of confinement that would

---

[50]     *See Peralta v. Vasquez*, 467 F.3d 98, 104 (2d Cir. 2006).

[51]     *See Dawkins v. Gonyea*, 646 F. Supp. 2d 594, 605 (S.D.N.Y. 2009).

-14-

constitute an Eighth Amendment violation.  As previously discussed in the

September 13, 2011 Order, eighteen months in SHU confinement may be

considered an atypical and extreme punishment, especially for a non-violent

offense.  Further, Richardson has satisfied the exhaustion requirement with regards

to this claim.  As such, Richardson's cruel and unusual punishment claim survives

defendants' renewed motion to dismiss.

### C.    Defendant's New Claims Against the State of New York

In his Second Amended Complaint, Richardson adds the State of New

York as a new defendant.  The Eleventh Amendment to the United States

Constitution bars a federal suit by a citizen against a state, or one of its agencies,

absent consent to suit or an express statutory waiver of immunity.[52]  It is well-

settled that the State of New York has not consented to be sued in federal court[53]

and the provisions of section 1983 were not intended to override a state's

immunity.[54]  Therefore, Richardson's claims against the State of New York must

---

[52]    *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *Alabama v. Pugh*, 438 U.S. 781 (1978).

[53]    *See Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 38-40 (2d Cir. 1977).

[54]    *See Quern v. Jordan*, 440 U.S. 332, 343 (1979).

be dismissed.[55]

## V.    CONCLUSION

For the reasons stated above, plaintiff's motion for reconsideration is denied.  Further, Richardson's access to the courts claim and due process claim regarding the Tier III disciplinary proceeding are once again dismissed for failure to state a claim.  Richardson's only remaining claim is his Eighth Amendment cruel and unusual punishment claim for his excessive eighteen month sentence in SHU.  A status conference is scheduled for February 9, 2012, at 4:30 p.m, in Courtroom 15C.[56]

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:  New York, New York
           January 9, 2012

---

[55]    *Id.* ("Unless a State has waived its Eleventh Amendment immunity or Congress has overridden it, . . . a State cannot be sued directly in its own name regardless of the relief sought.") (citing *Alabama v. Pugh*, 438 U.S. 781, 782 (1978) (*per curiam*)).

[56]    Because plaintiff is incarcerated, he will not be able to participate at this conference.  He can, however, send a representative, such as a family member, in his stead.  In any event, plaintiff will be provided with a copy of the transcript of the conference, free of charge.

**- Appearances -**

**Plaintiff (Pro Se):**

Dewayne Richardson
ID # 10-A-0404
Great Meadow Correctional Facility
P.O. Box 51
Comstock, NY 12821-0051

**For Defendants:**

Christina Okereke
Assistant Attorney General
120 Broadway, 24th Floor
New York, NY 10271
(212) 416-8746